UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY WILLIAMS-ELLIS, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 05 C 5030 |
| MARIO TRICOCI HAIR SALONS AND DAY SPAS and ELIZABETH ARDEN SPAS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on Plaintiff Kimberly Williams-Ellis ("Ellis")'s motion for class certification pursuant to Federal Rule of Civil Procedure 23 against Defendant Mario Tricoi Hair Salons and Day Spas, Inc. ("MT") and Defendant Elizabeth Arden Spas, LLC ("EA Spas") (collectively, "Defendants"). For the following reasons, Ellis's motion is denied.

## BACKGROUND

In December 2004, Ellis consulted MT's internet website, and learned that prices for haircuts at MT "start at" $40. She also made two separate telephone calls

to MT's call center. During her first call, Ellis spoke with an MT representative about various treatments. She was informed that the cost of a haircut at MT was "generally" $40. A few days later, Ellis called again to schedule a series of appointments for April 7, 2005. During the call, Ellis informed the MT representative that she was African-American because she "wanted somebody who knew what they were doing on [her] hair." Ellis testified that the MT representative informed her that her haircut would cost $40. Ellis's reservation was entered into MT's computer reservation system and booked to SKU #2122, an "Ethnic Women's Haircut."

There exists significant dispute as to the reasons and criteria for charging a woman the higher "ethnic" hair charge. Defendants submit the affidavit of one of MT's call center managers and trainers, Aileen Cordero, who attests that the higher "ethnic" charge is imposed by the stylist when the texture of an individual's hair requires extra skill, time, tools, and products to style. Ellis contends that the charge was instead imposed on the basis of race, rather than upon the basis of actual time and skill required to style an individual's hair. In support of this argument, she points to testimony of MT hair stylists as well as documents evidencing that MT stylists have two "base" rates - one for ordinary haircuts and one for "ethnic" haircuts. Further, the parties dispute the extent to which non-African-American women are charged the "ethnic hair" charge. While Cordero attests that "ethnic hair" is a standard term used

to describe hair texture, rather than race, Ellis points to testimony from MT's hair stylists who testified that the vast majority of their "ethnic hair" charges are applied to African-American women, and to testimony from other MT educators and trainers, who are unaware of the term "ethnic hair."

On April 7, 2005, Ellis arrived at MT's Oakbrook, Illinois, salon and was given a list of services she would receive that day as well as a written brochure stating that prices for haircuts "start at" $40. Ellis's hair stylist, Taylor, was a senior stylist who had worked for MT for 15 years (Taylor is the salon name used by Laurie Festag). Taylor cut and blow-dried Ellis's hair. Ellis testified that Taylor used no special tools or chemicals, and merely trimmed her ends. Ellis felt that her haircut was "fine" and she visited her regular stylist a few days later to have her hair done again.

The parties dispute whether Taylor charges the same rate to all new customers and whether Taylor would have charged Ellis $65 regardless of her ethnicity. While Cordero attests that Taylor's standard price is $65, the same price as Ellis was charged, documents produced by MT indicate that Taylor charges clients a range of prices, and that her base price for a woman's haircut is $10 less than her base price for an "ethnic" woman's haircut.

Ellis never discussed the price of a haircut with Taylor, or with anyone else at MT on April 7th. She paid for her services with two gift certificates and either a

credit or a debit card. She was handed a receipt, which she signed and she kept the customer copy for her records. Ellis did not realize she had been charged $65 for her haircut until the next day.

On April 8, 2005, Ellis called the MT call center to complain that she had been overcharged and requested a $25 refund. She did not tell the representatives that she had been quoted a $40 price for the haircut. Ellis was directed to Tom Bell, whom she believed to be a regional manager. She left two messages with Bell, in which she informed him that she had been quoted a price of $40 for her haircut but was charged $65. Bell never returned her calls; MT refused to refund her $25, and Ellis filed the instant lawsuit.

During briefing on summary judgment, the parties continued to conduct discovery, in the form of a survey of MT customers who were charged the "ethnic hair" charge. Dr. Ricardo Cossa, a statistics expert, analyzed the survey results. He explained that because the sample was small (586 people), the results could be interpreted in one of two ways. Under Dr. Cossa's first interpretation, the survey results showed that there was a 53% confidence level that of the persons surveyed, between 80.1% and 86.1% were African-American. Under Dr. Cossa's second interpretation, the survey results showed that there was a 90%-95% confidence level

that of the persons surveyed, between 74.9% and 91.3% of the sample were African-American.

Ellis argues that these results demonstrate that the majority of MT customers charged for an "ethnic women's haircut" are African-American. Alternatively, MT argues that the survey results do not indicate a discriminatory practice, but rather demonstrate that MT charged persons of other races for an "ethnic women's haircut." After considering both parties summary judgment motions, we held that there was sufficient evidence to show that Ellis's claims under Fraudulent Misrepresentation, Fraudulent Inducement, 42 U.S.C. § 1981, and the Illinois Consumer Fraud and Deceptive Business Practices Act could proceed. *Williams-Ellis v. Mario Tricoci Hair Salons and Day Spas*, 2007 WL 3232490 (N.D. Ill. November 1, 2007).

Before us now is Ellis's motion to certify the following class pursuant to Fed. R. Civ. P. 23:

> all African-American persons and other minorities who were charged and paid higher prices than were advertised or disclosed by Defendants or charged to similarly situated Caucasian customers by Defendants for the same salon services.

## LEGAL STANDARD

Fed. R. Civ. P. 23 governs class actions brought in the federal courts. However, before we analyze Ellis's proposed class under Fed. R. Civ. P. 23, we "must

decide whether (1) the proposed class is sufficiently defined so as to be identifiable, and whether (2) the named plaintiffs fall within the class definition." *Sandoval v. City of Chicago*, 2007 WL 3087136 * 2 (N.D. Ill. October 18, 2007). Making these preliminary determinations "allows both the court and the parties to anticipate the burdens the case will impose on them...[and] ensures that the suit will benefit only deserving individuals-the class description cannot be 'so broad as to include individuals who are without standing to maintain the action on their own behalf.'" *Id.*

Class certification should be denied if we are "required to conduct individual inquiries to determine whether each potential class member falls within the class." *Pastor v. State Farm Mutual Automobile Ins. Co.*, 2005 WL 2453900 *2 (N.D. Ill. Sept. 30, 2005). "A sufficiently definite class exists 'if its members can be ascertained by reference to objective criteria.'" *Wallace v. Chicago Housing Authority*, 224 F.R.D. 420, 424 (N.D. Ill. October 7, 2004) *citing Gomez v. Ill. State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D. Ill. Aug. 26, 1987). While it is proper to define a class by referencing the defendant's conduct, *Alliance to End Repression*, 565 F.2d 975, 977-78 (7th Cir. 1977), the class description must fail "if membership is contingent on the prospective member's state of mind." *Gomez*, 117 F.R.D. at 397. This is because the class definition must be sufficiently precise to make it

"administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Wallace*, 224 F.R.D. at 425.

After a party proves that their proposed class is sufficiently defined so as to be identifiable, they must next prove all four prerequisites listed in Fed. R. Civ. P. 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). These prerequisites are commonly referred to as 1) numerosity, 2) commonality, 3) typicality, and 4) representivity. "Failure to meet any one of these [prerequisites] precludes certification as a class. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Furthermore, even if a party seeking class certification has shown the existence of these four prerequisites, she still must prove that the proposed class satisfies one of the following three conditions pursuant to Fed. R. Civ. P. 23(b):

> (1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

With these principles in mind we turn to the instant motion.

**DISCUSSION**

I.  Preliminary Considerations

In the present case, Defendants oppose Ellis's motion for class certification, contending that the description of the class as proposed by Ellis is not sufficiently defined and therefore cannot be certified. More specifically, Defendants maintain that identifying individuals who might fit into this definition would require individual, fact-specific inquiries regarding Defendants' ultimate liability. We agree.

In order to determine whether a potential class member is part of Ellis's proposed class, we would need to make several individual inquiries regarding each potential class member, including: whether Defendants quoted the potential class member a specific price and not "generally $40"; whether the potential class member ended up paying more than that quoted price; which stylist the potential class member saw; how much that stylist charges to cut the hair of a similarly situated Caucasian customers; and if that charge is less than the price the potential class member paid. We emphasize that all of these subjective inquiries would need to be made for each and every potential class member before we could determine if they fit into Ellis's proposed class. *Wallace v. Chicago Housing Authority*, 224 F.R.D. 420, 424 (N.D. Ill. October 7, 2004) *citing Gomez v. Ill. State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D. Ill. Aug. 26, 1987). Requiring us to make such inquiries regarding "whether each

potential class member falls within the class" demonstrates that Ellis's potential class is not sufficiently defined so as to be identifiable. *Sandoval*, 2007 WL 3087136 at * 2. In light of the insufficiencies presented by the proposed class definition, analysis under Fed. R. Civ. P. 23 is not warranted.

## **CONCLUSION**

For the foregoing reasons, Ellis's motion for class certification is denied.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:  January 31, 2008