KIMBERLY WILLIAMS-ELLIS, on behalf )
of herself and all others similarly situated, )
)
          Plaintiff, )
)
  vs. )    05 C 5030
)
MT HAIR SALONS and DAY SPAS, and )
ELIZABETH ARDEN SPAS, LLC, )
)
          Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on Plaintiff Kimberly Williams-Ellis ("Ellis")' first amended motion for class certification pursuant to Federal Rule of Civil Procedure 23 against Defendant Mario Tricoci Hair Salons and Day Spas, Inc. ("MT") and Defendant Elizabeth Arden Spas, LLC ("EA Spas") (collectively, "Defendants"). For the following reasons, Ellis' motion is denied.

## BACKGROUND

On February 7, 2008, we denied class certification of Ellis' proposed class definition[1] and gave her leave to file an amended class definition. Our denial of Ellis'

---

[1] The previously proposed definition was: "All African-American persons and other minorities who were charged and paid higher prices than were advertised or disclosed by Defendants or charged to similarly situated Caucasian customers by Defendants for the same salon services.

certification motion was based on the fact we would be required to make individual, fact-specific inquiries regarding Defendants' ultimate liability in order to identify potential class members under the proposed definition. Ellis subsequently filed the instant motion requesting that we certify one of the following four definitions pursuant to Rule 23:

> Definition # 1. All individuals that were charged the 'Ethnic Woman's Haircut' charge, SKU #2122 or other 'ethnic' SKUs at Mario Tricoci or the equivalent at Elizabeth Arden Red Door Spas.
>
> Definition # 2. All African-American or other racial minorities that were charged the 'Ethnic Woman's Haircut' charge, SKU #2122 or other 'ethnic' SKUs at Mario Tricoci or the equivalent at Elizabeth Arden Red Door Spas.
>
> Definition # 3. All individuals that were charged the 'Ethnic Woman's Haircut' charge, SKU #2122 or other 'ethnic' SKUs at Mario Tricoci or the equivalent at Elizabeth Arden Red Door Spas for haircuts with Tricoci stylists who either listed higher charges for SKU #2122 or performed 'solely' ethnic haircuts.
>
> Definition # 4. All African-American or other racial minorities that were charged the 'Ethnic Woman's Haircut' charge, SKU #2122 or other 'ethnic' SKUs at Mario Tricoci or the equivalent at Elizabeth Arden Red Door Spas Tricoci for haircuts with Tricoci stylists who either listed higher charges for SKU #2122 or performed 'solely' ethnic haircuts.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions brought in the federal courts. However, before conducting an analysis of Rule 23, we "must decide whether (1) the proposed class definitions are sufficiently defined so as to be identifiable, and whether (2) the named plaintiffs fall within the class definition." *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006). If the proposed class definition requires the court "to conduct individual inquiries to determine whether each potential class member falls within the class" then a Rule 23 analysis is not required and the definition should be denied. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 63 (S.D. Ind. 1997). Alternatively, if a class is defined so that "'its members can be ascertained by reference to objective criteria,'" then it warrants consideration under Rule 23. *Gomez v. Ill. State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D. Ill. Aug. 26, 1987). This is because the class definition must be sufficiently precise to make it "administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Id.*

After a party proves that their proposed class is sufficiently defined so as to be identifiable, they must then show that their definition satisfies all four prerequisites listed under Rule 23(a):

    (1)    the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

These prerequisites are commonly referred to as 1) numerosity, 2) commonality, 3) typicality, and 4) representivity. "Failure to meet any one of these [prerequisites] precludes certification as a class." *Id.* Furthermore, even if a party seeking class certification has shown the existence of these four prerequisites, she still must prove that the proposed class satisfies one of the following three conditions pursuant to Rule 23(b):

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

With these principles in mind, we turn to the instant motion.

## DISCUSSION

*I. Preliminary Considerations*

Unlike Ellis's initial proposed class definition, two of Ellis' four proposed class definitions (Definition #1 and Definition #2) warrant review under Rule 23. This is because both Definition #1 and Definition #2 are based on objective factors. To be a class member of Definition #1, a person must have been charged under the "Ethnic Woman's Haircut" charge, under SKU #2122, or under another "ethnic" SKU at Defendants' salons. In addition to the objective criteria expressed in Definition #1, Definition #2 requires that the class members also be African American or a member of another racial minority. Whether Defendants charged someone the "Ethnic

- 5 -

Woman's Haircut" charge, SKU #2122, or another "ethnic" SKU and whether that person is a member of a racial minority are issues which require no subjective inquiry.

Furthermore, Ellis fits into both Definition #1 and Definition #2 because she is an African American individual whom Defendants billed under the "Ethnic Woman's Haircut" charge. As a result, we will consider both Definition #1 and Definition #2 under Rule 23 because both definitions present classes that are sufficiently defined so as to be identifiable and because Ellis falls into both class definitions.

Alternatively, like Ellis' initial proposed class definition, Definition #3 and Definition #4 do not merit review under Rule 23. Neither Definition #3 nor Definition #4 is sufficiently definite so as to permit the ascertainment of class members through the consideration of only objective factors. In order to determine whether a potential class member is part of Definition #3 or Definition #4, we would be required to make the following individual inquiries: which stylist the potential class member saw; how much that stylist charged the potential class member; whether that stylist had ever charged another customer under a different SKU and, if so, how much that stylist charged other customers under different SKUs; whether that stylist charged more under SKU #2122 than under other SKUs; whether the different SKUs are even comparable; and whether that stylist performed "solely" ethnic haircuts. Requiring us to make all of these subjective inquiries regarding "whether each potential class

member falls within the class" demonstrates that Definition #3 and Definition #4 are not sufficiently defined so as to be identifiable. *Oshana v*, 472 F.3d at 515. In light of the insufficiencies presented by Definition #3 and Definition #4, we will not analyze them under Rule 23. However, we will review Definition #1 and Definition #2 under Rule 23 to see if either amended definition warrants certification.

II.     *Rule 23(a) Factors*

   *A.     Numerosity*

To be certifiable, a proposed class must be so large that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticable means "extremely difficult and inconvenient." *Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999). When considering whether joinder is practicable, it is appropriate to look at the class size, the geographic dispersion of its members, the relief sought, and the ability of potential class members to bring their own independent claims. *Dale Elec., Inc. v. R.C.L. Elec., Inc.*, 53 F.R.D. 531, 536 (N.D. Ill. 1971).

In this case, the records indicate that at least 1600 customers were charged for an "Ethnic Woman's Haircut" at one of Defendants many locations. The size of the proposed class and the various geographical locations in which the members visited Defendants' stores demonstrates that both Definition #1 and Definition #2 satisfy Rule 23(a).

B. *Commonality*

To satisfy Rule 23(a)(2), there must be questions of fact or law that are common to members of the proposed class. Factual variations among the potential class members' grievances will not defeat class certification as long as there is a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of operative fact exists where the class members' claims allegedly arose from the defendant's standardized conduct. *Keele v.Wexler*, 149 F.3d 589 594 (7th Cir. 1998). There must be at least one common question of law or fact to satisfy the commonality requirement. *Armstrong v. Chicago Park District*, 117 F.R.D. 623, 627-28 (N.D. Ill. 1987).

In this case, both Definition #1 and Definition #2 present common questions of law and fact that satisfy the commonality requirement. More specifically, both amended definitions naturally lead to following inquiries: were African-Americans and other racial minorities the only groups of people billed under the "Ethnic Woman's Haircut" SKU or other "ethnic" SKUs; what factors did Defendants consider before billing its customers under the "Ethnic Woman's Haircut" charge, under SKU #2122, or under another "ethnic" SKU; did Defendants charge more for an "Ethnic Woman's Haircut" than for a standard haircut; and whether Defendants' actions of charging certain customers for an "Ethnic Woman's Haircut" or under SKU #2122 or

another "ethnic" SKU prevented the proposed class from making and enforcing contracts with Defendants under § 1981.

Though there may be factual differences between the circumstances surrounding how exactly each potential class member was charged for an "Ethnic Woman's Haircut" or under SKU #2122 or another "ethnic" SKU, these "factual variations among [the] class members' grievances [will] not defeat a class action" under the commonality element. *Keele,* 149 F.3d at 595 (7th Cir. 1998). Defendants argue that the survey results do not support Ellis' contention that African Americans made up the majority of Defendants' customers who were charged for an "Ethnic Woman's Haircut." However, this assertion discusses the merits of the proposed class' claim, which is not an appropriate consideration at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). This is because nothing in Rule 23 "gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen*, 417 U.S. at 163. As such, we find that both Definition #1 and Definition #2 satisfy the commonality requirement of Rule 23(a)(1).

C.   *Typicality*

The typicality requirement of Rule 23(a) is met if the same course of conduct that produced the named plaintiff's claim also produced the claims of the proposed

class and the same legal theories are advanced as to both. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This factor connects the two elements of commonality and adequacy of representation by ensuring that the claims litigated by the class representative involve the same factual and legal arguments that pertain to the class as a whole and consequently that the resolution of the representative's claims will address the claims of the group. *Id.; see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).

The survey in this case was sent out only to Defendants' customers who were charged for an "Ethnic Woman's haircut" or under another "ethnic" SKU. Of those surveyed, roughly 15% identified their race as white. Consequently, Definition #1 does not meet the requirements set forth in Rule 23(a)(3) because it includes Defendants' white customers, who would not be able to assert the same legal arguments as Ellis. Ellis' § 1981 claims against Defendants are premised on the legal theory that Defendants prevented her from making a contract with them on the same terms that it offered to its white customers. Defendants' white customers could not advance such a theory. Thus, resolution of Ellis' claims would not address the claims of all the potential class members of Definition #1. Accordingly, Ellis' claims would not be typical to those of all the members of the class proposed by Definition #1.

However, with respect to Definition #2, the same course of conduct that produced Ellis' claims against Defendants would also be the foundation for the class' claims. This is because Definition #2 only applies to African Americans and members of other racial minority groups. As such, Definition #2 meets the typicality requirement.

D.  *Adequacy of Representation*

The last requirement under Rule 23(a) is that the named plaintiffs will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In order to meet the representivity element, the class representative must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have individual claims that conflict with the claims of the other class members. In addition, plaintiff's counsel must be experienced, qualified, and generally able to conduct the litigation. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

Defendants do not refute that Ellis has a sufficient stake in the outcome of the case or that she will act as a strong advocate for the class members' claims, nor do they question her counsels' experience and qualifications in representing the proposed class. We have no independent reason to believe that Ellis or her counsel will not adequately represent the class proposed in Definition #2. Accordingly, we find that Rule 23(a)(4) has been satisfied.

## II. Rule 23(b) Requirements

For certification to be warranted, the proposed class must also satisfy one of the three conditions stated in Rule 23(b). Ellis has only presented arguments to suggest that the proposed class would satisfy Rule 23(b)(3) and we limit our consideration accordingly.

A Rule 23(b)(3) predominance inquiry tests whether the common factual or legal questions identified under Rule 23(a)(2) will be the main focus of the litigation. Though the commonality element and the predominance element are related, the predominance factor of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997).

A review of the common questions that exist in this case demonstrates that other highly individualized questions would be the focus in this litigation. For example, the factual question that Ellis suggests will predominate is whether Defendants charged the potential class members a higher amount because of their race. This particular question, however, can only be answered by first looking at the circumstances surrounding each individual class members' experience at Defendants' salons. More specifically, because the survey results indicate that the alleged "ethnic" hair charges were stylist specific, we would need to find out whether the Defendants provided each

potential class member with additional hair stylist time, specialty styling tools, or specialty hair products before administering a charge under the "Ethnic Woman's Haircut" charge or under SKU #2122 or under another "ethnic" SKU. We would then need to look at how much each individual stylist charged the potential class member and compare that amount to the amount Defendants charged their white customers for the exact same services. It is only after we made these determinations that we could look at the common question of law of whether Defendants' alleged practice of charging minority races more for its services prevented them from making contracts with Defendants that were equal to those made with their white Customers. As such, we do not find that Definition #2 presents us with common questions of law or fact that predominate over the other individual inquiries that would need to be made in order to address the question of race discrimination. Since Definition #2 does not meet the predominance requirements, Rule 23(b)(3) is not satisfied and the motion for class certification must be denied.

## CONCLUSION

For the foregoing reasons, Ellis' motion for class certification is denied.

Charles P. Kocoras
United States District Judge

Dated: March 27, 2008